Henderson, J.
delivered the opinion of a majority of the Court:
The operation of the consent rule, raises the doubt in this case; for, very clearly, without it, the plaintiff would be bound to prove the ouster, as a material allegation in his declaration. It becomes therefore necessary to examine the extent of the admissions made by the tenant, by entering into that rule. The confession has never been deemed to acknowledge that, which is the substance of the action, as where the plaintiff’s entry is necessary to complete his title, as an entry to avoid a fine, or the like; there an actual entry must be shewn. The ouster confesses an expulsion from some lands, but whether they are the lands mentioned in the declaration, or those which are in the defendant’s possession, creates the difficulty.
Taking the whole record together, it would seem that they are the latter. The plaintiff, either by name or boundary, gives a description (in his declaration) of the lands sued for. This declaration he causes to be served on the tenant in possession, for none but the tenant or his landlord can be made defendant. This is, in substance, saying to the tenant that you are in possession of the lands described in the declaration; that whatever description I may have given of them, either by name or boundary, they are the same lands which you possess; on which the tenant confesses that he ousted the plaintiff from these lands, and relies on his title as a justification. Should it appear at the trial, that the defendant’s possession did not interfere with the plaintiff’s *275 claim, it is but just that the mischief should be born by the plaintiff, who has misled the defendant, rather than by the the defendant, who has trusted to the plaintiff’s assertion. Should it be otherwise, yet the defendant would be compelled to decide at his peril, whether the lands described in the declaration were those possessed by him, although he is told so by the plaintiff; and this, too, where the plaintiff describes by artificial boundaries, the beginning and extent of which may be entirely unknown to the defendant. The practice of disclaimer shews the difficulties to which the defendant was driven; but this carried the remedy too far. By this means, an action commenced on proper ground, would be defeated by disclaiming the very lands which were the cause principally of the suit, and defending as to others to which his title was good. Or, if the plaintiff should after the disclaimer dismiss his suit, he must pay the defendant his costs; whereas, if the tenant had declined to defend, there would be no costs due to the casual ejector, but only the plaintiff’s own costs to be paid: Nor can the Court so regulate the disclaimer, as not to produce this injury, as some have alleged, by preventing the defendant from disclaiming lands which he had possessed, for the court has no proper mode of ascertaining this fact; and to settle this preliminary point, if it had, would increase litigation and delay and incur unnecessary expense. A contrary practice would also enable two designing men, more easily to convert the action of ejectment to the means of getting possession of lands, without making the actual tenant a defendant, or apprizing him of the suit. For these reasons, we think that in all cases, whether the consent rule is general or special, the plaintiff is bound to prove the possession of the defendant. In the case in 7 Term. 317, the question was fully considered, and the unanimous opinion of the court given in favor of the Law, as here laid down. The case in Wilson 220, is also an authority, although in that case the landlord defended; for he was certainly placed in his tenant’s situation.
*276 Taylor, C. J.
With the utmost respect for the opinion of my brethren, I cannot consent to innovate upon a long settled rule of practice, without being convinced that it is inconvenient or mischievous in the observance; but I have never had occasion to remark, that the present mode of proceeding in ejectment, as modified by the course of practice in this state, was productive of any ill effect. That the practice should be different in England, I readily grant; because the custom there of drawing declarations in very general terms is not calculated to apprize the defendant of the particular lands demanded. As the judges in that country observe, the declaration communicates but little intelligence to the defendant. If he happen to be in possession of any land falling within the declaration, he must defend in order to preserve his own right. In the very case cited from 7 Term. Rep. the declaration was for 30 acres of land, 20 acres of meadow and 20 acres of pasture, within a certain parish; so that if defendant had any land of that description within the parish, he must defend, in order to preserve it. But the custom, here, of describing with literal exactness the boundaries of the land claimed, leaves nothing for the defendant to doubt about; or if he should doubt, survey may be had to inform him, whether he claims the land sued for. If he is satisfied, at the first view of the declaration, that he neither possesses the land, nor claims a right to it, he in may enter a disclaimer, when called upon to plead; if he is unable to decide, upon reading the declaration, he may enter into the consent rule, and also have leave to disclaim, if he should afterwards discover, upon a survey, that he ought so to do. It has appeared to me that defendants were perfectly protected by the practice of disclaimer; and that no injury could arise to either party, under the disposition constantly manifested by the courts, to consider the fictions of an ejectment as within their control, and unfettered by any technical strictness that would frustrate the equitable purpose of bringing forward the real right and title of the parties. If by any fraudulent connivance between two per *277 sons, a third were turned out of possession, I apprehend he would be reinstated instantly upon the court’s being apprized of such an abuse of the process of the law. My brother Locke directs me to signify his unwillingness to alter the practice. But as a majority of the Court think differently, the rule for a new trial is discharged.